UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMETRIA SOLOMON,

    Plaintiff,

v.

UNKNOWN COOK, *et al.*,

    Defendants.
                                   /

Case No. 1:23-cv-1193

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

    This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Demetria Solomon, a prisoner in the custody of the Michigan Department of Corrections (MDOC). The incident occurred at the MDOC's Ionia Correctional Facility (ICF). Five defendants remain in this lawsuit: Corrections Officer (CO) Cody Eavey; CO Ogochukwu Ugboma; CO Mlongeca Luube (named as "Unknown Lurbe"); CO Lawrence Odunuga (named as "Unknown Ddunvga"); and, CO Lawrence Sherwood. This matter is now before the Court on "MDOC defendants Ugboma, Luube, Odunuga, and Sherwood's motion for summary judgment on the basis of exhaustion" (ECF No. 25). Plaintiff did not oppose the motion.

    **I.**    **Background**

    The Court summarized plaintiff's claim as follows:

> Plaintiff alleges that Defendants work together and had been threatening to retaliate against Plaintiff for having assaulted an officer in the past. Plaintiff states that on June 2, 2023, Defendant Henning was working in the control booth where he was charged with opening and closing the cell doors. Defendants Eavey, Ugboma, Lurbe, Ddunvga, and Sherwood escorted Plaintiff to the shower and while they were moving through the unit, they yelled to other prisoners that Plaintiff was a snitch and that they would pay any prisoner who destroyed or damaged Plaintiff's personal property. (ECF No. 1, PageID.3.) Once Plaintiff was placed in the shower,

1

> these Defendants escorted prisoner Hudson to Plaintiff's cell so he could destroy Plaintiff's television and JP6 player. Plaintiff asserts that following this incident, prisoner Hudson received extra food trays and phone time. Subsequently, Defendants made fun of Plaintiff, telling him that his property had been destroyed because he was a snitch. However, Plaintiff believes that Defendants had his property destroyed because he had a prior assault on prison staff. Plaintiff states that he has since received daily threats from other prisoners as a result of Defendants calling him a snitch.
>
> Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

Opinion (ECF No. 16, PageID.53).

The Court dismissed plaintiff's claims under the First Amendment (retaliation) and Fourteenth Amendment (due process related to deprivation of property). *Id*. at PageID.56-59. The Court did find that plaintiff alleged Eighth Amendment claims because defendants told other prisoners that he was a snitch:

> The Sixth Circuit has observed that labeling a prisoner as a snitch can constitute deliberate indifference to that inmate's safety. *See Comstock v. McCrary*, 273 F.3d 693, 699 n.2 (6th Cir. 2001); *LaFountain v. Martin*, 334 F. App'x 738, 741 (6th Cir. 2009) (citing *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (noting that "labeling an inmate a snitch satisfies the *Farmer* standard, and constitutes deliberate indifference to the safety of that inmate")). The Court concludes that Plaintiff has alleged sufficient facts to support his Eighth Amendment claims against Defendants Eavey, Ugboma, Lurbe, Ddunvga, and Sherwood at this point in the litigation.

*Id*. at PageID.60. Accordingly, the Court allowed plaintiff's Eighth Amendment claims against defendants Eavey, Ugboma, Lurbe (Luube), Ddunvga (Odunuga), and Sherwood to proceed. *Id*.

## II.    Summary Judgment

### A.    Legal standard

Defendants Ugboma, Luube, Odunuga, and Sherwood have moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

2

matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Plaintiff did not file a responsive brief as required by W.D. Mich. LCivR 7.2(c) ("any party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials").[1]  "The fact that there has been no

---

[1] The Court notes that plaintiff included a "verification" at the end of his complaint, presumably so that it could serve as supporting material for a response to a motion for summary judgment. *See* Compl. at PageID.4; *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir.1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment).  Here, there are no verified allegations which address exhaustion.  Furthermore, plaintiff did not file a responsive brief to defendants' motion for summary judgment to contest the underlying law or facts raised in defendants' motion.

3

response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

### B.    Lack of Exhaustion

#### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance

4

procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 3. Discussion

Defendants point out that before plaintiff filed his complaint, he completed only one grievance through Step III, that being Grievance ICF-23-06-579-28b ("579"). *See* Defendants' Brief (ECF No. 26, PageID.89-90, 95-98). Defendants admit that plaintiff named

5

defendants Ugboma, Luube, Odunuga, and Sherwood at Step I of the grievance (which they refer to as ICF-579). *Id*. at PageID.96.  However, defendants point out that plaintiff's grievance did not allege the conduct which is at issue in this lawsuit, stating:

> Although Solomon named COs Ugboma, Luube, Odunuga, and Sherwood at Step I, he did not allege how they engaged in any unconstitutional or actionable conduct. *Vandiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance"). To put a finer point on it, at Step I in ICF-579, Solomon's allegations against COs Ugboma, Luube, Odunuga, and Sherwood relate to the claims against them which the Court has dismissed (ECF No. 16), and Solomon did not allege that they called him a "snitch" in front of the other prisoners (Ex. 2 at 7).  Indeed, as Solomon alleged at Step I in ICF-579, the only CO who allegedly called Solomon a "snitch" was CO Eavey. (*Id.*) As such, Solomon did not grieve his claims that COs Ugboma, Luube, Odunuga, and Sherwood called him a snitch; so his claims against them should be dismissed.

*Id*. at PageID.96-97.

The grievance must give fair notice of the misconduct or mistreatment as measured against the claim alleged in the prisoner's complaint. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).   Here, plaintiff directed Grievance 579 against defendants Eavey, Ugboma, Luube, Odunuga, and  Sherwood (and former defendants Cook and Henning) "for retaliation and deliberate indifference to personal property" related to Eavey calling plaintiff a snitch and the other defendants allowing another prisoner to go into plaintiff's cell and "break [his] television and JPG.".  Grievance 579 at PageID.117.  This grievance gave defendants fair notice of plaintiff's claim that Eavey called him a snitch and that the other defendants allowed a prisoner to destroy plaintiff's property.   However, the grievance did not provide fair notice of plaintiff's Eighth Amendment claim claim that *all* defendants yelled to other prisoners that plaintiff was a snitch *and* that their deliberate indifference to his personal safety resulted in daily threats.  In short, plaintiff's grievance that Eavey called him a snitch and allowed another prisoner to break his property does

6

not support plaintiff's Eighth Amendment claim that all defendants called him a snitch and put his life in danger.

Based on this record, plaintiff did not properly exhaust a grievance to support his Eighth Amendment claims against defendants Ugboma, Luube, Odunuga, and Sherwood. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants Ugboma, Luube, Odunuga, and Sherwood's motion for summary judgment should be granted.

### III.    Recommendation

For these reasons, I respectfully recommend that defendants Ugboma, Luube, Odunuga, and Sherwood's motion for summary judgment on the basis of exhaustion (ECF No. 25) be **GRANTED** and that they be **DISMISSED** from this action.

Dated:   July 9, 2025                                    /s/ Ray Kent
                                                         RAY KENT
                                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).